Case 4:19-cv-01221 Document 8 Filed on 10/08/19 in TXSD Page 1 of 7

United States District Court
Southern District of Texas
**ENTERED**
October 08, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARGARET JOHNSON, Individually and as Heir and Representative of the Estate of Thomas Johnson, Deceased, § § § § | | |
| Plaintiff, § | | |
| V. § | CIVIL ACTION NO. H-19-1221 | |
| § | | |
| SSC HOUSTON NORTHWEST OPERATING COMPANY LLC d/b/a NORTHWEST HEALTH & REHABILITATION CENTER, § § § § | | |
| Defendant. § | | |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge in this case that has been referred for all pretrial proceedings is Defendant's Motion to Compel Arbitration (Document No. 4). Having considered motion, the absence of a response, which is construed under the Local Rules of this District as non-opposition to the motion, the terms of the written "Agreement for Dispute Resolution Program," which the decedent signed on December 22, 2016, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Defendant's Motion to Compel Arbitration (Document No. 4) be GRANTED.

This is a medical negligence case brought by the heir and representative of the estate of Thomas Johnson, deceased. In the state court petition filed in the 165th District Court of Harris County, Texas, Plaintiff Margaret Johnson, mother of the decedent Thomas Johnson, alleged that Defendant's negligence was the proximate cause of Thomas Johnson's death. Defendant timely removed the case to this Court on the basis of diversity jurisdiction, and then filed a Motion to Compel Arbitration. Despite participating in the filing of the parties' Joint Discovery and Case

Management Plan, Plaintiff did not appear for the Rule 16 Scheduling Conference. In addition, despite the Order filed on September 12, 2019 (Document No. 7), which gave Plaintiff additional time, until September 20, 2019, to file a response to the Motion to Compel Arbitration, no response to that motion has been filed as of this date. As such, the Motion to Compel Arbitration is deemed unopposed.

In the Fifth Circuit, a two-prong inquiry is used to determine whether parties should be compelled to arbitrate their disputes. *OPE International LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445–46 (5th Cir. 2001); *Webb v. Investacorp., Inc.*, 89 F.3d 252, 257-58 (5th Cir. 1996). The first prong requires the court to determine whether "the parties agreed to arbitrate their dispute." *OPE*, 258 F.3d at 445; *see also Kaplan*, 115 S. Ct. 1920, 1924 (1995); *Webb*, 89 F.3d at at 258 (citing cases). Two considerations guide the court in making this determination: (1) whether a valid agreement to arbitrate exists between the parties; and (2) whether the dispute in question is within the scope of the arbitration agreement. *Id.* Under the second prong, the court must ensure that no legal restraints external to the agreement have foreclosed arbitration. *Id.* at 446. If the court finds that both prongs of this test are met, arbitration is mandatory. *Mitsubishi Motors Corporation v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

In determining whether there is a valid agreement to arbitrate, the court must consider the language of the contract entered into by the parties. *Commerce Park at DFW Freeport v. Mardian Constr. Co.*, 729 F.2d 334, 338 (5th Cir. 1984). And, "[s]ince arbitration agreements are matters of contract, the validity and scope of such an agreement are governed by state law." *Gonzales v. Brand Energy & Infrastructure Services, Inc.*, No. H12-1718, 2013 WL 1188136 (S.D. Tex. 2013); *see also Kaplan*, 514 U.S. at 944 ("When deciding whether the parties agreed to arbitrate a certain matter

2

(including arbitrability), courts generally . . . should apply ordinary state law principles that govern the formation of contracts."); *Klein v. Nabors Drilling USA, L.P.*, 710 F.3d 234, 236 (5th Cir. 2013) ("whether there is a valid agreement to arbitrate . . . is governed by ordinary state-law contract principles.").

In determining whether the dispute in question falls within the scope of the arbitration agreement, again, it is state law contract rules that govern. *Tittle v. Enron Corp.*, 463 F.3d 410, 419 (5th Cir. 2006) (in determining the scope of the arbitration clause, the court is to "apply Texas rules of contract interpretation"). But, where there are any doubts or ambiguities as to scope of the arbitration provision, they are ordinarily resolved in favor of arbitration. *Klein*, 710 F.3d at 236-237 ("It is only in step two of the analysis, determining the scope of a valid arbitration agreement, that we apply the federal policy and resolve ambiguities in favor of arbitration."); *Neal v. Hardee's Food Systems, Inc.*, 918 F.2d 34, 37 (5th Cir. 1990); *Smith Barney Shearson, Inc. v. Boone*, 47 F.3d 750, 752 (5th Cir. 1995); *Mar-Len of La., Inc. v., Parsons-Gilbane*, 773 F.2d 633, 635 & 636 (5th Cir. 1985) ("[W]henever the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration." "The weight of this presumption is 'heavy.'"). Consequently, "a valid agreement to arbitrate applies 'unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'" *Personal Security & Safety Systems, Inc. v. Motorola, Inc.*, 297 F.3d 388, 392 (5th Cir. 2002) (quoting *Neal*, 918 F.2d at 37)).

Here, the Agreement upon which Defendants' Motion to Compel Arbitration is based is an "Agreement for Dispute Resolution Program," which provides in relevant part as follows:

**DEFINITIONS:**

1. "Parties" include (a) the resident, any and all family members who would have a right to bring a claim in state court on behalf of the resident or the resident's estate, a legal representative, including a power of attorney for healthcare and/or financial matters or a court appointed guardian, or any other person that may have a cause of action arising out of or relating in any way to the resident's stay at the facility and (b) the facility, any parent or subsidiary of the facility, any company affiliated with the facility, or any of the facility's officers, directors, managers, employees, or agents acting in such capacity or any other person that may have a cause of action arising out of or relating in any way to the resident's stay at the facility.

2. "Dispute" means (a) any claim or dispute totaling $50,000.00 individually or in the aggregate that would constitute a cause of action that either party could bring in a court of law (b) this agreement does not prevent either party from initiating a grievance proceeding, complaint to survey agencies, appeal proceedings with the appropriate state or federal entity regarding an involuntary transfer or discharge, or any such claim or dispute involving solely a monetary claim in an amount less than $50,000.00. Any such claim shall not be deemed a dispute under this agreement.

> Notwithstanding the foregoing, the parties may agree voluntarily to mediate or arbitrate the claims listed in Section (b) above in accordance with the terms of the Agreement. All claims based in whole or in part on the same incident(s), transaction(s), or related course of care or services provided by the facility to the resident must be submitted for resolution by the DRP in one proceeding.

DRP consists of three steps that must be followed.

### STEP 1
### NOTICE OF THE DISAGREEMENT

If a party to this Agreement has a disagreement with the other party, the party with the disagreement must notify the Administrator, in writing, regarding the specific nature of the dispute. The written Notice should include details regarding the incident(s) or circumstance(s) that is the subject of the dispute. The details should includes dates, times, a description of the incident(s) or circumstance(s), and identification of the individuals involved. Please note that all concerns pertaining to the same incident or circumstance should be included within the same Notice. The Administrator will forward the Notice to the DRP Review Committee within five (5) days of receipt. The members of the DRP Review Committee will include the Regional Vice President of Operations, the Regional Clinical Director, the District

Human Resources Representative and the Risk Services Coordinator. Within fourteen (14) days of receiving the written Notice of a Dispute, the Committee must review the details of the Notice and inform the parties in writing of the Review Committee's decision.

### STEP 2
### MEDIATION BY THE THIRD PARTY

If the DRP Committee is unable to resolve the dispute either party may request mediation within thirty (30) days of the DRP Review Committee's decision if the disagreement involves an amount greater than Fifty Thousand Dollars ($50,000). Mediation is an informal process in which an impartial third party (someone not associated with the parties) will meet face-to-face with both parties to help then reach a mutually agreeable solution. The mediator does not have the authority to impose a decision that the parties are required to follow. An impartial third party experienced in mediation can help each party understand the other party's point of view, which often leads to a resolution.

### STEP 3
### ARBITRATION

If a satisfactory resolution of the disagreement cannot be reached at mediation, either party may request arbitration within thirty (30) days of the conclusion of mediation. This is the third and final step of the Program. Arbitration is a process in which an impartial third party called an arbitrator (who usually is a retired judge or attorney) conducts a hearing, reviews evidence from the parties, and renders an opinion on legal responsibility and damages in the form of an "award." Unlike Mediation, the arbitrator's decision is final, and the parties are required to follow the arbitrator's decision.

(Document No. 4-1 at 4-5). In addition, as preface to the Agreement's explanation of the three step resolution process, the Agreement set forth in capitalized, bold-faced type, the following:

> **BY AGREEING TO HAVE ALL DISAGREEMENTS RESOLVED THROUGH THE DISPUTE RESOLUTION PROGRAM, THE PARTIES AGREE TO WAIVE THE RIGHT TO A JUDGE OR A JURY TRIAL AND TO HAVE THE DISPUTE RESOLVED THROUGH VARIOUS STEPS, CULMINATING IN A DECISION BY AN ARBITRATOR.**

(Document No. 4-1 at 4).

Here, the undisputed evidence in the record supports the conclusion that there is a valid

agreement to arbitrate between the parties, and that the dispute in question falls within the scope of the arbitration agreement. Thomas Johnson, the decedent whose care at Defendants' facility underlies the claims in this case, signed the Agreement in December 2016, and Sycina Townsend signed the Agreement on behalf of Defendant. (Document No. 4-1 at 10; 4-2 at 2). The Agreement specifically provides that it applies to Thomas Johnson, who was the resident at Defendant's facility, and Margaret Johnson as a "family member[] who would have a right to bring a claim in state court on behalf of the resident or the resident's estate, a legal representative, including a power of attorney for healthcare and/or financial matters or a court appointed guardian, or any other person that may have a cause of action arising out of or relating in any way to the resident's stay at the facility." In addition, the medical negligence claims alleged by Margaret Johnson in this case, which she valued at $200,000 to $1,000,000 in her state court petition (Document No. 1-+1 at 7), fall within the Agreement's definition of a "dispute." Nothing in the record leads to a different conclusion on either prong of the arbitration inquiry, particularly given that Plaintiff has not filed a response or advanced any argument against Defendant's Motion to Compel Arbitration. Accordingly, the Magistrate Judge

RECOMMENDS that Defendant's Motion to Compel Arbitration (Document No. 4) be GRANTED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b). Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent

plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this 8th day of ~~September~~ October, 2019.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE